IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:20-CV-349-D

GOLDEN CORRAL CORP. and )
GOLDEN CORRAL FRANCHISING )
SYSTEMS, INC., )
 )
               Plaintiffs, )
 )
v. )         **ORDER**
 )
ILLINOIS UNION INSURANCE )
COMPANY, )
 )
               Defendant. )

On May 14, 2020, Golden Corral Corporation and Golden Corral Franchising Systems Incorporated (collectively, "Golden Corral" or "plaintiffs") filed a complaint against Illinois Union Insurance Company ("Illinois Union" or "defendant") in Wake County Superior Court seeking to recover financial losses arising from the COVID-19 pandemic [D.E. 1-1]. On July 2, 2020, Illinois Union removed the action to this court [D.E. 1]. On August 28, 2020, Golden Corral filed an amended complaint [D.E. 15]. On February 1, 2021, Illinois Union moved for judgment on the pleadings [D.E. 24]. On September 8, 2021, the court granted Illinois Union's motion. See Golden Corral Corp. v. Illinois Union Ins., 559 F. Supp. 3d 476, 492 (E.D.N.C. 2021). On August 11, 2022, the United States Court of Appeals for the Fourth Circuit affirmed the court's order and judgment. See Golden Corral Corp. v. Illinois Union Ins., No. 21-2119, 2022 WL 3278938, at *1 (4th Cir. Aug. 11, 2022) (per curiam) (unpublished).

On January 31, 2025, Golden Corral moved for relief from judgment [D.E. 50] and filed a memorandum in support [D.E. 51]. See Fed. R. Civ. P. 60(b)(6). On February 21, 2025, Illinois

Union responded in opposition [D.E. 53]. On March 21, 2025, Golden Corral replied [D.E. 55]. As explained below, the court denies plaintiffs' motion for relief from judgment.

I.

This case concerns an insurance coverage dispute, a change in decisional law, and the value of judicial finality. On September 8, 2021, the court decided an insurance coverage dispute in favor of Illinois Union. See Golden Corral, 559 F. Supp. 3d at 484–92. In reaching that decision, the court confronted an issue then-undecided by the Supreme Court of North Carolina: whether an insurance policy's "physical loss, damage or destruction" clause covered losses attributable to COVID-19 closure orders under North Carolina law. See id. at 484–90. When confronting an undecided issue under North Carolina law, the court must predict how the Supreme Court of North Carolina would rule. See id.; Town of Nags Head v. Toloczko, 728 F.3d 391, 398 (4th Cir. 2013); Twin City Fire Ins. v. Ben Arnold-Sunbelt Beverage Co. of S.C., 433 F.3d 365, 369 (4th Cir. 2005). The court predicted that the Supreme Court of North Carolina would rule that "physical loss, damage or destruction" clauses do not cover losses attributable to COVID-19 closure orders. Golden Corral, 559 F. Supp. 3d at 484–90. Accordingly, the court entered judgment for Illinois Union. See id. at 492. On August 11, 2022, the Fourth Circuit affirmed. See Golden Corral, 2022 WL 3278938, at *1.

On December 13, 2024, the Supreme Court of North Carolina decided North State Deli, LLC v. Cincinnati Insurance Co., 386 N.C. 733, 908 S.E.2d 802, 812 (2024). There, the Court applied "background principles" of North Carolina law and held that "direct physical loss" clauses cover losses attributable to COVID-19 closure orders. Id. at 746–47, 908 S.E.2d at 812. Relying on North State Deli, Golden Corral seeks relief from judgment under Federal Rule of Civil

2

Procedure 60(b)(6). See [D.E. 51] 5–11, 17–21. Illinois Union opposes the motion. See [D.E. 53] 1–20.

II.

Under Rule 60(b), a moving party must first demonstrate that (1) its motion is timely, (2) it has a meritorious claim or defense, and (3) the nonmoving party will not suffer unfair prejudice from setting aside the judgment. See, e.g., United States v. Welsh, 879 F.3d 530, 533 (4th Cir. 2018); Robinson v. Wix Filtrate Corp., 599 F.3d 403, 412 n.12 (4th Cir. 2010); Nat'l Credit Union Admin. Bd. v. Gray, 1 F.3d 262, 264 (4th Cir. 1993); Werner v. Carbo, 731 F.2d 204, 206–07 (4th Cir. 1984). If the moving party meets its initial burden, then it must "satisfy one of the six enumerated grounds for relief under Rule 60(b)." Gray, 1 F.3d at 266; see Welsh, 879 F.3d at 533.

Golden Corral seeks relief under Rule 60(b)(6). See [D.E. 51] 5–11, 17–21. Under Rule 60(b)(6), "the court may relieve a party or its legal representative from a final judgment, order, or proceeding for . . . any [ ] reason that justifies relief." Fed. R. Civ. P. 60(b)(6). Courts generally refer to this as the "catch-all provision." Fed. Trade Comm'n v. Ross, 74 F.4th 186, 194 (4th Cir. 2023), cert. denied, 144 S. Ct. 693 (2024). To justify relief under the catch-all provision, a plaintiff must demonstrate "extraordinary circumstances." Aikens v. Ingram, 652 F.3d 496, 500 (4th Cir. 2011) (en banc). Few circumstances are truly extraordinary under Rule 60(b)(6), including intervening legal developments under federal or state law. See, e.g., Gonzalez v. Crosby, 545 U.S. 524, 535–38 (2005); Agostini v. Felton, 521 U.S. 203, 239 (1997); Ross, 74 F.4th at 194; Moses v. Joyner, 815 F.3d 163, 168 (4th Cir. 2016); Dowell v. State Farm Fire & Cas. Auto. Ins., 993 F.2d 46, 48 (4th Cir. 1993); Hall v. Warden, Md. Penitentiary, 364 F.2d 495, 496 (4th Cir. 1966) (en banc); see also Cincinnati Ins. v. Flanders Elec. Motor Serv., Inc., 131 F.3d 625, 631 (7th Cir.

3

1997); Biggins v. Hazen Paper Co., 111 F.3d 205, 212 (1st Cir. 1997); McGeshick v. Choucair, 72 F.3d 62, 65 (7th Cir. 1995); Batts v. Tow-Motor Forklift Co., 66 F.3d 743, 750 (5th Cir. 1995); DeWeerth v. Baldinger, 38 F.3d 1266, 1273–74 (2d Cir. 1994).

The court assumes without deciding that Golden Corral satisfies Rule 60(b)'s threshold requirements. As for extraordinary circumstances, Golden Corral argues that its unsuccessful Fourth Circuit appeal, the Supreme Court of North Carolina's subsequent decision in North State Deli, the considerations expressed in Erie Railroad Co. v. Tompkins, 304 U.S. 64 (1938), and North Carolina's policy not to accept certified questions to its Supreme Court cumulatively qualify as extraordinary circumstances. See [D.E. 51] 17–21. They do not. There is nothing extraordinary about an unsuccessful appeal. Moreover, "a change in decisional law subsequent to a final judgment provides no basis for relief under Rule 60(b)(6)." Ross, 74 F.4th at 194 (cleaned up); see Gonzalez, 545 U.S. at 535–38; Agostini, 521 U.S. at 239; Moses, 815 F.3d at 168; Hall, 364 F.2d at 496. This principle applies whether the change in decisional law affects state or federal law. See, e.g., Flanders, 131 F.3d at 631; Biggins, 111 F.3d at 212; McGeshick, 72 F.3d at 65; Batts, 66 F.3d at 750; DeWeerth, 38 F.3d at 1273; Dowell, 993 F.2d at 48.

As for Erie, Golden Corral argues that divergent outcomes in state and federal court qualify as extraordinary circumstances. No. As the Fifth Circuit observed in Batts v. Tow-Motor Forklift Co., 66 F.3d 743 (5th Cir. 1995):

> The general rule that a change in decisional law will not ordinarily warrant Rule 60(b)(6) relief has greater force in an Erie case because in this context a federal court is doing no more than fulfilling its obligation scrupulously to determine how a state court would decide a question. . . . That a subsequent state court resolves the question differently does not render the federal diversity court decision invalid, or mar the proceeding as unfair.

Id. at 750 (emphasis added); see Flanders, 131 F.3d at 631; McGeshick, 72 F.3d at 65; DeWeerth, 38 F.3d at 1273; Dowell, 993 F.2d at 48. To bolster its argument, Golden Corral repeatedly cites

4

Pierce v. Cook & Co., 518 F.2d 720 (10th Cir. 1975) (en banc) See [D.E. 51] 18–21. The court acknowledges the Tenth Circuit's holding in Pierce. See id. at 723. The court, however, declines to follow Pierce and instead credits the prevailing conclusion that the circuit courts have reached in the past 50 years that a change in state decisional law generally does not justify relief under Rule 60(b)(6). See, e.g., Flanders, 131 F.3d at 631; Biggins, 111 F.3d at 212; McGeshick, 72 F.3d at 65; Batts, 66 F.3d at 750; DeWeerth, 38 F.3d at 1273; Dowell, 993 F.2d at 48. Golden Corral also analogizes its circumstances to the sui generis proceedings and decisions arising from 9/11 litigation. See [D.E. 51] 20 (citing In re Terrorist Attacks on Sept. 11, 2001, 741 F.3d 353 (2d Cir. 2013)). The court rejects Golden Corral's comparison between its mine-run insurance coverage dispute and that one-of-a-kind litigation. Thus, Erie considerations do not help Golden Corral.

Finally, the court acknowledges Golden Corral's observation that there is no mechanism to certify questions to the Supreme Court of North Carolina. See Toloczko, 728 F.3d at 398. But even with Golden Corral's other arguments, North Carolina's policy not to accept certified questions to its Supreme Court does not create extraordinary circumstances. To hold otherwise would open the floodgates for parties to relitigate long-decided cases and upset the delicate balance between "the sanctity of final judgments, expressed in the doctrine of res judicata, and the incessant command of the court's conscience that justice be done in light of all the facts." Ross, 74 F.4th at 194. Moreover, Golden Corral made a "voluntary, deliberate, free, and untrammeled choice" to be a first-mover in North Carolina COVID-19 insurance litigation. Dowell, 993 F.2d at 48 (cleaned up). Despite Golden Corral's knowledge that North State Deli was percolating through the North Carolina courts, Golden Corral never sought to stay this action. See [D.E. 31] 19 (citing earlier proceedings in North State Deli). Indeed, Golden Corral vigorously opposed any delay in this action. See [D.E. 30] 4–5. Golden Corral cannot have it both ways. Finality is a weighty

consideration, and Golden Corral's circumstances are not sufficiently extraordinary to ignore finality. See, e.g., Gonzalez, 545 U.S. at 535–38; Agostini, 521 U.S. at 239; Ross, 74 F.4th at 194; Moses, 815 F.3d at 168; Flanders, 131 F.3d at 631; McGeshick, 72 F.3d at 65; Batts, 66 F.3d at 750; DeWeerth, 38 F.3d at 1273; Dowell, 993 F.2d at 48; Hall, 364 F.2d at 496. "This very strict interpretation of Rule 60(b) is essential if the finality of judgments is to be preserved." Gonzalez, 545 U.S. at 535 (quotation omitted). Thus, the court denies Golden Corral's motion for relief from judgment under Rule 60(b)(6).

III.

In sum, the court DENIES plaintiffs' motion for relief from judgment [D.E. 50].

SO ORDERED. This 14 day of May, 2025.

JAMES C. DEVER III
United States District Judge